UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK



----------------------------------------------------------------x

KBM WORLDWIDE, INC.

               Plaintiff,

      -against-

WRIT MEDIA GROUP, INC. AND
ERIC MITCHELL,

             Defendants.

---------------------------------------------------------------- x

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 17 2016 ★

LONG ISLAND OFFICE

Civil Action No.

**CV 16 4583**

BIANCO, J.

LINDSAY, M.J.

## COMPLAINT

Plaintiff, KBM WORLDWIDE, INC. ("KBM"), files this Complaint and alleges the following:

### I. SUMMARY

1.    KBM brings this action for equitable relief and damages caused by violations of the antifraud provisions of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(b) thereunder by ERIC MITCHELL ("Mitchell") and WRIT MEDIA GROUP, INC. ("the Corporate Defendant"), (collectively, jointly and severally, with Mitchell, "the Defendants"). Through this action, KBM seeks to recover losses caused by the Defendants' intentional and/or reckless misconduct, including compensatory and restitutionary damages, which losses can only be avoided if the equitable relief and injunctive relief described herein below is granted.

2.    That at all relevant times, Mitchell was and remains the Chief Executive Officer ("CEO") of the Corporate Defendant.

3.      That KBM was an investor in the Corporate Defendant and was well-known to the Defendants.  KBM's business strategy at the time of the stock purchases and loans and issuance of notes at issue was to invest in publicly-traded, nano-cap companies whose securities are traded on the Over the Counter Bulletin Board, OTCQB and the "Pink Sheets."  Nano-cap companies, such as the Corporate Defendant, are often capital-constrained, as their low market capitalization hinders their access to banks or investment firms.  KBM provides capital to such companies as an investment in return for shares purchased at a discount to market price.

4.      That KBM invested a total of $148,500 in the Corporate Defendant by purchasing securities directly from the Corporate Defendant and making loans thereto, and has sustained damages of $142,765 exclusive of attorney's fees, pre judgment interest, costs and late fees.

## II.       JURISDICTION AND VENUE

5.      This action arises under the anti-fraud provisions of the Securities Exchange Act of 1934 (15 U.S.C. §78j(b)), and Securities and Exchange Commission Rule 10b-5 (17 C.F.R. §240.10b-5). The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa). Defendants, directly and indirectly, singly or in concert, made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, or of the mails in connection with the acts, practices and courses of conduct alleged in this Complaint, certain of which occurred within the Eastern District of New York.  That in addition, subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332 as there is complete diversity between the parties and there is more than $75,000 at issue.  Thus, this Court would have diversity jurisdiction even absent the foregoing claim made pursuant to 15 U.S.C. §78.

6.      Venue is proper in this court pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), because certain of the transactions, acts, practices, and

courses of conduct constituting violations of duties established by the Federal Securities Laws occurred within this judicial district.  Additionally, KBM transacts business and maintains its principal place of business in this district. That further, the Corporate Defendant has contractually agreed with KBM to fix jurisdiction venue for any action in the State of New York, County of Nassau, which is within the Eastern District and the jurisdiction of this Court, and that New York law shall apply to any dispute between the parties.

7.      That in connection with the acts alleged in this Complaint, the Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

### III. PARTIES

8.      That at all times relevant herein, KBM has been and remains a corporation organized and existing under the laws of the State of New York with an office for business in the County of Nassau, not engaged in the banking business.

9.      That at all times relevant herein, the Corporate Defendant has been and remains a corporation organized and existing under the laws of the State of Delaware, within an office for business in the State of California, County of Los Angeles.

10.      That at all times relevant herein, Mitchell has been and remains a resident of the State of California, County of Los Angeles.

### IV.      FACTUAL ALLEGATIONS

11.      That heretofore and from time to time, the Defendants have made material misrepresentations of fact to KBM, knowing that such misrepresentations were false, and upon which KBM relied and was damaged.

12.      That as a result of these material misrepresentations, KBM invested $148,500 in the Corporate Defendant and sustained damages thereby.

## AS AND FOR A FIRST CAUSE OF ACTION
## PROMISSORY NOTES DEFAULTS

13.      KBM repeats and realleges each and every allegation contained in paragraphs 1 through 12 of this Complaint with the same force and effect as if fully set forth at length herein.

14.      That on or about June 3, 2014, the Corporate Defendant, as borrower, made, executed and delivered to KBM a convertible promissory note ("the June Note") in the amount of $53,000, which Note was issued pursuant to a Securities Purchase Agreement ("the June Agreement") of even date, which provided for certain issuance of, and conversion rights in and to the common stock of the Corporate Defendant.

15.      That the agreements between the parties provided that venue for any action between the parties would be the State of New York, County of Nassau pursuant to §4.6 of the June Note and §5 of the June Agreement.

16.      That in the June Note, the Corporate Defendant: (i) granted KBM  the right to convert all or any part of the outstanding and unpaid principal amount and accrued interest of the Note into fully paid and non-assessable shares of common stock of the Corporate Defendant; and (ii) agreed that an Event of Default of the Note shall occur upon the failure of the Corporate Defendant to timely issue shares of common stock of the Corporate Defendant to KBM  upon receipt of a conversion notice delivered pursuant to the Note.

17.      That the Corporate Defendant has willfully and unlawfully refused to deliver the Conversion Shares and rather has intentionally sought to hinder, delay and avoid the Corporate Defendant's conversion obligations pursuant to the June Note and June Agreement at the

4

direction of Mitchell, which actions were beyond the scope of his status and duties as Officer and Director of the Corporate Defendant, and instead were undertaken for his own personal gain.

18.     That Article 3 (specifically 3.2) of the June Note provides among other things that the Corporate Defendant will be in default if it announces or threatens in writing that it will not honor its obligations to issue shares of stock to KBM according to the Note and the Securities Purchase Agreement.   Notwithstanding the foregoing, heretofore the Corporate Defendant deliberately failed and refused to maintain sufficient shares in reserve to permit conversions to be carried out, and further failed and refused to comply with its reporting requirements under the Federal Securities Laws, each of which was a material default under the June Note and June Agreement, thus creating an anticipatory repudiation of the June Note and June Agreement.  That as a result, the Corporate Defendant defaulted in its obligations under the June Note and June Agreement.

19.     That by virtue of the foregoing, the Corporate Defendant is in default under the June Note and June Agreement and no such default has been cured.   That moreover, the maturity date for payment under the June Note (March 3, 2015) has come and gone and no payment has been made thereunder despite due demand for such payment (except for a small reduction of $5,735.00 which was received through the conversion process prior to the Corporate Defendant's defaults).   That as a result the principal amount owed under the June Note is $47,625.00

20.     That the Corporate Defendant and Mitchell have not cured these defaults thereby causing damages to KBM in an amount to be determined by the Court but not less than an amount equal to $71,437 ($47,625.00 X 150%) together with applicable interest thereon.  These additional damages arise from the fact that the Note expressly provides that in the event of an

uncured default, the obligor will be responsible for payment of 150% of the amount of the principal balance then due as liquidated damages and not as a penalty.

21.     That moreover, pursuant to Section 1.4(g) of the June Note, the Corporate Defendant acknowledged that the liquidated damages provision contained in Section 1.4(g) is justified as damages resulting from a failure, attempt to frustrate, interference with the conversion rights are difficult if not impossible to qualify, and that the default amount was reasonable under the circumstances.

22.     That the Corporate Defendant and Mitchell's actions have caused damages to KBM in an amount to be determined by the Court but not less than an amount equal to $71,437 together with applicable interest thereon. That a true copy of a Notice of Default dated February 23, 2015 that was served upon the Corporate Defendant is annexed hereto and incorporated herein by reference as Exhibit "A". Thus, the Corporate Defendant is in default and KBM is entitled to and demands judgment in the sum of $71,437 plus interest and late fees.

23.     That in addition, on July 29, 2014 the Corporate Defendant executed and delivered to KBM a Note and Agreement ("the July Note and July Agreement") with virtually identical terms except that the amount of the Note was $32,500 and the maturity date for payment was April 29, 2015.  The Corporate Defendant and Mitchell are also in default under the July Note and Agreement based upon the same facts and circumstances as well as the fact that both Notes and Agreements have cross default provisions that provide that a default under any Note or Agreement is a default under all Notes and Agreements between the parties.  That the principal balance due on the July Note and Agreement is $32,500 and the amount now owed to KBM on principal alone is $48,750.

24. That in addition, on September 15, 2014 the Corporate Defendant executed and delivered to KBM a Note and Agreement ("the September Note and September Agreement") with virtually identical terms except that the amount of the Note was $63,000 and the maturity date for payment was June 17, 2015. The Corporate Defendant and Mitchell are also in default under the September Note and Agreement based upon the same facts and circumstances as well as the fact that both Notes and Agreements have cross default provisions that provide that a default under any Note or Agreement is a default under all Notes and Agreements between the parties. That the principal balance due on the September Note and Agreement is $63,000 and the amount now owed to KBM on principal alone is $94,500.

25. That by virtue of the foregoing, KBM is entitled to judgment against the Corporate Defendant and Mitchell in the amount of $214,148 on all three Notes and Agreements in the aggregate, no portion of which has been made despite due demand for same.

## AS AND FOR A SECOND CAUSE OF ACTION
## FRAUD IN THE INDUCEMENT

26. KBM repeats and realleges each and every allegation contained in paragraphs 1 through 25 of this Complaint with the same force and effect as if fully set forth at length herein.

27. That KBM made an investment in the aggregate amount of One Hundred Forty-Eight Thousand Five Hundred ($148,500.00) in the Corporate Defendant as a result of the foregoing transactions and as a result of the Defendants' defaults and intentional wrongdoing has not received any repayment of principal or interest on the Notes and has also been deprived of its rights and opportunities to convert the debt into Conversion Shares as aforesaid.

28. That KBM 's willingness to assent to the terms of the investment and the Notes, and the investment itself, was caused by the fraudulent misrepresentations of the Corporate

Defendant and Mitchell contained within the Notes and Agreements and confirmed within resolutions of the Board of Directors of the Corporate Defendant including but not limited to the representations that the Corporate Defendant would not fail to comply with conversion requirement of the Notes, which misrepresentation was the most crucial and important of all because it was always the bargain for expectation of KBM and the intention of the parties that the repayment of the Notes would occur via the conversion process.

29.     That upon information and belief, the Corporate Defendant and Mitchell, acting in concert and based upon a conspiracy between them, made the foregoing misrepresentations with the knowledge that KBM would rely thereon, and that the Corporate Defendant had no intention to honor its obligations under the Notes and the Agreements and Mitchell acted unilaterally, outside of the scope of his status and duties as an Officer and Director and for his own personal gain solely to hinder, delay and avoid the Corporate Defendant's conversion obligations pursuant to the Notes and Agreements.

30.     That as a result of the foregoing, KBM has been irreparably harmed.

31.     That the Corporate Defendant's and Mitchell 's actions have caused damages to KBM in an amount to be determined by the Court but not less than an amount equal to $142,765 together with applicable interest thereon.

## AS AND FOR A THIRD CAUSE OF ACTION
## BREACH OF CONTRACT – LOST PROFITS

32.     KBM repeats and realleges each and every allegation contained in paragraphs 1 through 31 of this Complaint with the same force and effect as if fully set forth at length herein.

33.     That as a direct result of the defaults of the Defendants and their failure to abide by their contractual obligations, KBM has been deprived of, and continues to be deprived of, the opportunity to acquire and to sell the common stock of the Corporate Defendant at a profit,

which profits have been irretrievably lost as the markets for the common stock can no longer be recreated.

34.     That by reason of the foregoing, KBM is entitled to judgment in an amount to be determined by the Court and equal to the lost profits that KBM would have realized had the stock been made available and delivered to KBM in accordance with its Conversion Notices.

## AS AND FOR A FOURTH CAUSE OF ACTION
## BREACH OF CONTRACT – LITIGATION EXPENSES

35.     KBM repeats and realleges each and every allegation contained in paragraphs 1 through 34 of this Complaint with the same force and effect as if fully set forth at length herein.

36.     That the Notes and Agreements provide that in the event of a dispute and/or litigation between the parties, the prevailing parties shall be entitled to recover all of its litigation expenses including reasonable attorney fees.

37.     That by reason of the foregoing, KBM is entitled to a judgment against Defendants for the reasonable legal fees and litigation expenses paid or incurred in this action.

## AS AND FOR A FIFTH CAUSE OF ACTION FRAUD:
## VIOLATIONS OF SECTION 10(b) of the EXCHANGE ACT
## [15U.S.C. §78j(b) and Rule 10(b)-5b THEREUNDER [17 C.F.R.§240.10b-5 (b)]

38.     KBM repeats and realleges each and every allegation contained in paragraphs 1 through 37 of this Complaint with the same force and effect as if fully set forth at length herein.

39.     That through the foregoing conduct, the Corporate Defendant, together with and acting in concert with Mitchell, knowingly and recklessly engaged in manipulation and deceptive conduct in connection with a securities transaction in violation of 15 U.S.C. §78j(b) and the Rules and regulations promulgated thereunder, by failing to disclose and misrepresenting the true nature of their intentions as set forth above.

40.     That the Defendants further engaged in knowing manipulation and deceptive conduct by directly representing and warranting that the Corporate Defendant and Mitchell would honor its obligations pursuant to the Notes and Agreements when in truth and in fact they had no intention to do so.

41.     That in reliance on the foregoing misrepresentations and material omissions by the Defendants, KBM was induced to purchase the Corporate Defendant's securities and to make loans to the Corporate Defendant as aforesaid.

42.     That as a direct and proximate result of the Defendant's conduct, KBM suffered damages, in an amount to be determined by the Court, for not less than $142,765.

## AS AND FOR A SIXTH CAUSE OF ACTION – INJUNCTIVE AND EQUITABLE RELIEF

43.     KBM repeats and realleges each and every allegation contained in paragraphs 1 through 42 of this Complaint with the same force and effect as if fully set forth at length herein.

44.     That the total amount due to KBM is $214,148 exclusive of any additional liquidated damages, consequential damages, default interest, statutory prejudgment interest, legal fees, court costs and litigation expenses.

45.     That while KBM is clearly entitled to a money judgment, the Corporate Defendant is clearly incapable of satisfying any such judgment obtained.

46.     That in its most recent filing required under the Federal Securities Laws, the Corporate Defendant concedes that it has total assets that are exceeded by its total liabilities thus rendering it insolvent.

47.     That the Corporate Defendant also represents therein that for that period it had a net loss and that at the end of the period, it had insufficient cash to meet its obligations, thus rendering it insolvent.

10

48.     That the only viable avenue available to KBM to obtain repayment of the outstanding Notes is by exercising its conversion rights and thereby obtaining unrestricted shares of stock in the Corporate Defendant and selling those shares on the open market.

49.     That at present there is an active market for the Corporate Defendant's stock which continues to trade in significant volume.

50.     That so long as that activity continues and assuming that KBM's conversion rights are not frustrated or impeded, KBM will be able to obtain the unrestricted shares, sell them in the market place, and recover the outstanding principal indebtedness owed to it as well as anticipated profits.

51.     That the market for the shares of stock in the Corporate Defendant is extremely volatile, such that there can be no assurance that the current level of activity will continue to be sustained.

52.     That if as and when such trading subsides or is curtailed, any shares obtained by KBM at that time no longer be saleable thereby preventing KBM from recovering the indebtedness due it, thereby leading to irreparable harm based on unrecoverable judgments.

53.     That time is of the essence, and to prevent KBM from suffering such irreparable harm, KBM must immediately be permitted to exercise its conversion rights, and the Defendants must be immediately directed to cooperate with the same and to deliver the shares of stock at issue.

54.     That because of the nature, condition, and value of the stock which KBM seeks to acquire in this action is unique to it under the facts and circumstances presented, and because KBM will suffer and sustain irreparable damage that cannot be recovered through a money

judgment against the Defendants, KBM has no adequate remedy at law and is entitled to equitable relief.

55.     That by virtue of the foregoing, KBM is entitled to and demands a judgment directing the Defendants to execute and deliver all documents necessary to complete the conversion process and to deliver the stock sought by KBM and to which it is contractually entitled in the form of a mandatory injunction.

## AS AND FOR AN SEVENTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH CONTRACT

56.     KBM repeats and realleges each and every allegation contained in paragraphs 1 through 55 of this Complaint with the same force and effect as if fully set forth at length herein.

57.     That the defendant Mitchell was fully aware at all times of the existence and the valid and binding nature of the contracts and agreements between KBM and the Corporate Defendant.

58.     That Mitchell intentionally and with malice aforethought caused the Corporate Defendant to breach its contractual agreements with KBM without any legal or factual justification based upon the breaches and defaults contained herein above.

59.     That Mitchell caused these breaches and defaults to take place for his own personal benefit and to maintain a higher stock price and stock value for his own holdings, and for his own financial benefit, and not for the benefit of the Corporate Defendant.

60.     That as a result, Mitchell is liable to KBM under the theory of intentional interference with contract, as the contracts at issue were in fact breached, thereby causing damages to KBM of at least $214,148.

WHEREFORE, KBM demands judgment against Defendants as follows:

12

(i)     For $214,148 on the First Cause of Action;

(ii)    For $142,765 on the Second Cause of Action;

(iii)   For an amount of lost profits to be determined by the Court but in no event less than $214,148 on the Third Cause of Action;

(iv)   Awarding KBM its reasonable legal fees and costs of litigation on the Fourth Cause of Action;

(v)    For an award of consequential damages in an amount to be determined by the Court but no less than $142,765 on the Fifth Cause of Action;

(vi)   For a temporary restraining order and a preliminary and permanent injunction against the Defendants directing that said Defendants and their agents, servants and employees immediately take all steps necessary and proper to permit the conversion of debt to stock and to deliver the stock at issue as described above on the Sixth Cause of Action;

(vii)  For an award of damages to be determined by the Court but no less than $214,148 on the Seventh Cause of Action; and

(viii) Together with the costs and disbursements of this action, interest at the rate of default as set forth in the Note; pre-judgment interest as provided by statute, and such other and further relief as the Court may deem just and proper.


Dated: Great Neck, New York
       August 16, 2016

NAIDICH WURMAN LLP

By: _____
    Richard S. Naidich, Esq. (RSN 4102)
    111 Great Neck Road, Suite 214
    Great Neck, NY 11021
    Telephone:516-498-2900
    Facsimile:516-466-3555
    Attorneys for Plaintiff –
    KBM WORLDWIDE, INC.

# NAIDICH WURMAN LLP
### *Attorneys at Law*

RICHARD S. NAIDICH
KENNETH H. WURMAN

JUDAH A. EISNER

111 GREAT NECK ROAD, SUITE 214
GREAT NECK, NEW YORK 11021
TELEPHONE (516) 498-2900
FACSIMILE (516) 466-3555

BERNARD S. FELDMAN
ROBERT P. JOHNSON

_____
OF COUNSEL

February 23, 2015

## NOTICE OF DEFAULT

***VIA E-MAIL (eric.mitchell@writmediagroup.com);***
***& FEDERAL EXPRESS***
Writ Media Group, Inc.
8200 Wilshire Boulevard, Suite 200
Beverly Hills, CA  90211

ATTN:  Eric Mitchell, CEO

RE:   KBM Worldwide, Inc. with Writ Media Group, Inc.

Dear Mr. Mitchell:

As you know, KBM Worldwide, Inc. (the "Investor") made loans to Writ Media Group, Inc. (the "Company") and the Company executed, among other things one or more Convertible Promissory Note(s) (the "Note(s)").  The Note(s) provide in pertinent part that the Company shall be in default if it fails to comply with the reporting requirements of the Exchange Act.

Based upon the foregoing, the Company is now in default under the Note(s).  Demand is hereby made for the immediate payment as provided in the Note(s) a sum representing 150% of the remaining outstanding principal balances, together with Default Interest as provided for in the Note(s) (the "Default Amount").  Your failure to comply with the demand of this letter will result in the investor, exercising all rights under the Note(s).  Additionally, should the Default Amount not be paid within 5 business days from the date of this letter, in addition to all the other rights and remedies available to it, the Investor shall in its sole discretion convert the Default Amount into equity as provided for in the Note(s).

Very truly yours,

Bernard S. Feldman,
Of Counsel

BSF:ms
Cc: KBM Worldwide, Inc.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK          Civil Action No.:

KBM WORLDWIDE, INC.,

                    Plaintiff,

        -against-

WRIT MEDIA GROUP, INC. AND ERIC MITCHELL,

                    Defendants.

---

**SUMMONS AND COMPLAINT**

---

**NAIDICH WURMAN LLP**
**ATTORNEYS FOR PLAINTIFF**
**111 GREAT NECK ROAD - SUITE 214**
**GREAT NECK, NEW YORK 11021**
**(516) 498-2900**

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of
New York State, certifies that, upon information and belief and reasonable inquiry, the contentions
contained in the annexed document are not frivolous.

DATED:  August 16, 2016                  Signature: _____
                                         Print:  Richard S. Naidich, Esq.

Service of a copy of the within                   is hereby admitted.
Dated:                                   _____
                                         Attorney(s) for

---

**PLEASE TAKE NOTICE**

NOTICE            that the within is a (certified) true copy of an Order entered
OF ENTRY          in the office of the clerk of the within named Court on          , 20_____.

NOTICE OF         that an Order of which the within is a true copy will be presented for
SETTLEMENT        settlement to the Hon.                        , one of the judges of
                  within named Court, at                  on          , 20_____ at
                  a.m.

DATED: Great Neck, New York
        August 16, 2016          NAIDICH WURMAN LLP
                                 Attorneys for Plaintiff
                                 111 Great Neck Road - Suite 214
                                 Great Neck, New York 11021
                                 (516) 498-2900