UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

KBM WORLDWIDE, INC., : Civil Action No.: 2:16-cv-4583 (JFB) (ARL)

Plaintiff,

-against-

WRIT MEDIA GROUP, INC. AND
ERIC MITCHELL,

Defendants.

--------------------------------------------------------------- x

AFFIDAVIT OF SETH KRAMER IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

STATE OF NEW YORK )
) ss:
COUNTY OF NASSAU )

Seth Kramer, being duly sworn, deposes and says:

1. I am the President of KBM Worldwide, Inc. the plaintiff in the above entitled action, ("KBM") and am fully familiar with all of the facts and circumstances as hereinafter set forth.

2. I am making this affidavit in support of KBM's motion for summary judgment against defendant Writ Media Group, Inc. ("the Corporate Defendant), and to discontinue the action without prejudice against defendant Eric Mitchell ("the Individual Defendant").

3. That on or about June 3, 2014, the Corporate Defendant, as borrower, made, executed and delivered to KBM a convertible promissory note ("the June Note") in

the amount of $53,000, which Note was issued pursuant to a Securities Purchase Agreement ("the June Agreement") of even date, which provided for certain issuance of, and conversion rights in and to the common stock of the Corporate Defendant. A true copy of the June Note and the June Agreement are annexed hereto as Exhibits "A" and "B" respectively.

4. That on or about July 29, 2014, the Corporate Defendant, as borrower, made, executed and delivered to KBM a convertible promissory note ("the July Note") in the amount of $32,500, which Note was issued pursuant to a Securities Purchase Agreement ("the July Agreement") of even date, virtually identical to the June Note and Agreement. Copies of the July Note and Agreement are annexed hereto as Exhibits "C" and "D" respectively

5. That on or about September 5, 2014, the Corporate Defendant, as borrower, made, executed and delivered to KBM a convertible promissory note ("the September Note" and together with the June Note and the July Note, collectively, "the Notes") in the amount of $63,000, which Note was issued pursuant to a Securities Purchase Agreement ("the September Agreement" (and together with the June Agreement and the July Agreement, collectively "the Agreements") of even date, which were identical in all respects to the prior Notes. Copies of the September Note and Agreement are annexed hereto as Exhibits "E" and "F" respectively.

6. That in the Notes, the Corporate Defendant: (i) granted KBM the right to convert all or any part of the outstanding and unpaid principal amount and accrued interest of each Note into fully paid and non-assessable shares of common stock of the Corporate Defendant; and (ii) agreed that an Event of Default of the Note shall occur

upon the failure of the Corporate Defendant to timely issue shares of common stock of the Corporate Defendant to KBM upon receipt of a conversion notice delivered pursuant to the Note.

7. That the Corporate Defendant has willfully and unlawfully refused to deliver the Conversion Shares and rather has intentionally sought to hinder, delay and avoid the Corporate Defendant's conversion obligations pursuant to the Notes and Agreements.

8. That Article III (specifically 3.2) of the June Note provides that the Corporate Defendant will be in default if it announces or threatens in writing that it will not honor its obligations to issue shares of stock to KBM according to the Notes and Securities Purchase Agreements. Notwithstanding the foregoing, the Corporate Defendant deliberately failed and refused to maintain sufficient shares in reserve to permit conversions to be carried out, and further failed and refused to comply with its reporting requirements under the Federal Securities Laws each of which was a material default under the June Note and June Agreement, thus creating an anticipatory repudiation of the Notes and Agreements. That as a result of these defaults, a Notice of Default dated February 23, 2015 was served upon the Corporate Defendant in accordance with the default and notice provisions of the Notes and Agreements. A copy of the Notice of Default is annexed hereto as Exhibit "G".

9. That these defaults were never cured. Moreover, the maturity date for each of the Notes has come and gone and no payments have been received, nor have any conversions taken place, except for a single conversion of $5,735.00 which was made prior to the aforementioned defaults. Stated differently, the maturity date for the June

Note which was March 3, 2015 has come and gone, the maturity date for the July Note which was April 29, 2015 has come and gone and the maturity date for the September Note which was June 17, 2015 has come and gone and yet no payments have been made and no further conversions have taken place.

10. That as a result of the foregoing, the Corporate Defendant owes KBM the sum of $71,437.00 on the June Note which consists of the remaining principal balance of $47,625.00, which has been increased to $71,437.00 by virtue of the default provisions in the Note. Likewise, the amount due on the July Note is the remaining principal balance of $32,500 which has been increased to $48,750.00 by virtue of the defaults. With regard to the September Note the amount owed is the original principal sum of $63,000 which has now been increased to $94,500.00 on account of the same default provisions. Therefore, in the aggregate, the Corporate Defendant now owes KBM the total sum of $214,148.00 not including any interest, legal fees or any other expenses.

11. That the Notes contain a provision known as and referred to as a "cross default" provision that expressly provides that a breach or default by the Corporate Defendant of any covenant or other term or condition contained in any Note due to KBM shall be considered a default under all Notes due to KBM. Moreover, the maturity dates for payment of the Notes has come and gone, such that the Corporate Defendant is again in default. The Corporate Defendant has also have failed to cure the defaults in payment.

12. As a result of these uncured defaults, the plaintiff was compelled to begin the within action. A copy of the Summons and Complaint, which includes and incorporates a copy of the Notice of Default, is annexed hereto as Exhibit "H".

13. I hereby confirm that the contents and allegations contained in the Complaint are true and accurate and I reaffirm that the Corporate Defendant owes the sums as set forth above under the Notes and Agreements. Accordingly, the total amount owed in principal is $214,148.00 on the Notes, Agreements, and the Guarantee.

14. The Corporate Defendant has actually confirmed in writing that KBM is entitled to the relief that it seeks in this action. The Corporate Defendant has issued and filed with the United States Securities and Exchange Commission a Form 10Q, which is a quarterly report pursuant to Section 15(d) of the Securities Exchange Act of 1934 for the quarterly period ending December 31, 2016. On pages 8 through 11 of that Form 10Q, the Corporate Defendant makes representations to the public as to its financial condition concerning debts that are owed. Among these debts are the June, July and September 20 15 Notes and Agreements made with KBM. With respect to each Note, the Corporate Defendant states that "as of today the debt is still outstanding and therefore is in default". Form 10Q, p. 10. These concessions and admissions by the Corporate Defendant are repeated on page 21. A copy of the Form 10Q is annexed hereto as Exhibit "I".

15. The Corporate Defendant and the Individual Defendant have appeared by counsel and filed an Answer with Counterclaims and Affirmative Defenses. A copy of same is annexed hereto as Exhibit "J". KBM has filed a Reply and Answer to Counterclaims, a copy of which is annexed hereto as Exhibit "K".

16. The alleged affirmative defenses and counterclaims are addressed fully in the Plaintiff's Memorandum of Law being submitted in support of this motion. I am advised by KBM's counsel that none of the defenses or counterclaims have any merit whatsoever. For example, the first affirmative defense and counterclaims contends that

KBM is required "not to liquidate their stock positions in such a manner that would devastate the market for defendants common stock". However, there is absolutely no provision in any of the Notes or Agreements that would support that contention. I am also advised that for the legal reasons set forth by KBM's counsel that there is no statute, case law or commentator that would do likewise.

17. The Corporate Defendant also contends that the Notes and Agreements are subject to the criminal usury laws of the State of New York. However, I am advised by counsel that the Notes and Agreements do not constitute "loans or forbearances" and instead are convertible instruments not subject to the usury laws at all. Thus, that defense is meritless.

18. The Defendants also contend that KBM is not entitled to injunctive relief. However, the entire purpose of the Notes and Agreements and indeed of this action, is to permit KBM to convert the debt represented by the Notes into stock because that is exactly what KBM does as the core of its business. A review of the Form 10Q makes clear why that is. For example, as of December 31, 2016 the Corporate Defendant had $14,163.00 in cash and total current liabilities of $957,278.00. Indeed, the Corporate Defendant by its own admission owes far more money in convertible debt both to KBM and to Magna Group, LLC than it has funds available to pay. (Parenthetically Magna Group has brought an action against the Corporate Defendant in the Supreme Court, New York County being defended by the same counsel who has moved to dismiss that case for failure to serve the Summons and Complaint properly).

19. The entire nature of KBM's business consists of permitting the conversion process to go forward so that a profit can be realized on the discount portion of the

purchase and sale of the stock at issue. If the conversion is thwarted, as in this case, KBM has virtually no chance or opportunity of getting repaid or realizing its rights under the contractual instruments at issue because small cap companies like the Corporate Defendant generally have virtually no assets with which to pay a money judgment. As a result, all parties to these convertible note transactions are well aware that it is extremely unlikely and almost unheard of for the convertible note to be paid in cash. That is why it is so vital that the conversion process be completed and why KBM must be awarded summary judgment on its cause of action for specific performance to compel the conversion process to be completed here. Otherwise, a mere money judgment will be of no moment and provide no real relief to KBM.

20. Just so the record before this Court is clear, the Corporate Defendant has no defense to this action. For example, the contention that these transactions are usurious is utterly without merit, as the Notes and SPAs provide for an interest rate of only 8% per year. The profit that KBM would make on the transaction if it was completed successfully is not at the expense of the Corporate Defendant, since the shares that are the subject of the conversion process are sold in the open market and the funds received by KBM are paid by third parties, not the Corporate Defendant. Thus, the Corporate Defendant cannot and does not pay any interest in excess of 25% per year as would be required for the criminal usury statutes to apply. Moreover, I am advised by KBM's counsel that it would be manifestly unfair and contrary to law to permit the Corporate Defendant to raise such defense. That is because through KBM's affiliate, Asher Enterprises, Inc. we entered into a cordial and close business relationship with the Corporate Defendant through the issuance and successful completion of six separate

Notes, SPAs, and transactions virtually identical to those at issue here. The Corporate Defendant cooperated and permitted all of those transactions to be fully paid and finalized through the conversion process without objection or difficulty. Under such circumstances, I believe that the Corporate Defendant should be precluded from using any such usury defense even if it did apply (and it does not).

21. The Corporate Defendant's counterclaim is also without merit, as KBM has not engaged in any conduct whatsoever to cause any financial loss or damage to the Corporate Defendant and indeed, the Corporate Defendant has not suffered any damages. To the contrary, it remains in possession of the funds which were advanced to it under the transactions that are the subject of this action. Stated otherwise, each of the Notes was fully funded and the Corporate Defendant received everything that it was contractually entitled to.

22. Any other defenses raised are also unfounded. For example, the increase in the amount due under the Notes as a result of the Corporate Defendant's defaults is in no way a penalty but merely represents damages actually caused by those defaults and is designed to compensate KBM for the losses that it sustained as a result of having the conversion process thwarted.

23. Just so the Court has a full and clear picture of the willful nature of the Corporate Defendant's defaults, on August 15, 2016, in a final attempt to resolve this matter, KBM put in a conversion request to Pacific Stock Transfer Co., which was the Corporate Defendant's transfer agent at that time. The corporate Defendant had switched transfer agents from Signature Stock Transfer Inc. in an attempt to prevent conversions

because the irrevocable transfer agent letter that was issued at the beginning of these transactions was only signed by Signature Stock Transfer Inc.

24. Stated differently, this unauthorized change of transfer agents was a separate and independent breach of the Notes and SPAs. Not only that, but we were advised from Pacific Stock Transfer Co. that they did not have any stock in reserve in any event which itself was a separate and distinct breach. By the way, Mr. Mitchell had actually gone on record in June 2016 by advising KBM in an e-mail that all of the shares of the Corporate Defendant had been reserved as of February 2016 *for other transactions*. That is to say the Corporate Defendant and Mr. Mitchell had stock available in 2016 – they just didn't have it for KBM! In other words, the Corporate Defendant and Mr. Mitchell, have at least in our view, acted in bad faith. Copies of the original transfer agent letter dated June 3, 2014, the Rule 144 Representation Letter dated August 15, 2016, the opinion of counsel of even date, the Notice of Conversion, an e-mail from Jackie Garcia of Pacific Stock (the Corporate Defendant's agent) and Mr. Mitchell's e-mail, as well as an additional e-mail from Pacific Transfer dated August 9, 2016 are annexed hereto collectively as Exhibit "L". Perhaps to add insult to injury, on August 10, 2016 Mr. Mitchell sent KBM an additional e-mail stating that it was his fiduciary obligation to "bring in new money" and that once he filed his 10K he could "address" the buyout/payoff of KBM's Notes. That is to say Mr. Mitchell was more interested in keeping the value of his stock higher so that he could bring in new money rather than pay his existing bona fide obligations. In this light, summary judgment should be granted. A copy of that separate e-mail is annexed hereto as Exhibit "M".

WHEREFORE, it is respectfully requested that the motion be granted in all respects, together with such other and further relief as to the Court may seem just and proper.

SETH KRAMER

Sworn to before me this
5th day of April, 2017

NOTARY PUBLIC

ROBERT P. JOHNSON
NOTARY PUBLIC STATE OF NEW YORK
NO. 30-4735214
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES MARCH 30, ~~19~~ 2019