Remove Watermark Now

EXHIBIT B

pdfelement

Remove Watermark Now

EX-99.1 2 exh99-1.htm FINRA CORRESPONDENCE DATED SEPTEMBER 16, 2014
Exhibit 99.1

FINRA Financial Industry Regulatory Authority

September 16, 2014

**Via Electronic Mail**
Mr. Michael Siegel President & CEO
Ecolocap Solutions Inc.
1250 South Grove Avenue
Barrington, IL 60010
ms@ecolocap.com

c/o Conrad Lysiak
The Law Office of Conrad Lysiak, P.S.
601 West First Avenue
Suite 903
Spokane, Washington
99201
cclysiak@lysiaklaw.com

pdfelement

**Re: Deficiency Notice Pursuant to FINRA Rule 6490**
**Ecolocap Solutions Inc. - CAS-29596-C5Y7S4**
**Company-Related Notification Relating to Proposed 1-2,000 Reverse Split.**

Dear Mr. Siegel:

Pursuant to FINRA Rule 6490, FINRA's Department of Market Operations ("Department") received your request to process documentation related to the above-referenced Company-Related Action for Ecolocap Solutions Inc. ("ECOS"). This letter hereby notifies you that pursuant to FINRA Rule 6490(d), the Department has determined that such request is deficient and it is necessary for the protection of investors, the public interest, and to maintain fair and orderly markets that documentation related to the above-referenced Company-Related Action will not be processed.

The Department's deficiency determination is based on the following factors:

1. As set forth in FINRA Rule 6490(d)(3)(3), FINRA has actual knowledge that the issuer, associated persons, officers, directors, transfer agent, legal adviser, promoters or other persons connected to the issuer or the Securities Exchange Act ("SEA") Rule 10b-17 Action or Other Company-Related Action are the subject of a pending, adjudicated or settled regulatory action or investigation by a federal, state

Remove Watermark Now

or foreign regulatory agency, or a selfregulatory organization, or a civil or criminal action related to fraud or securities laws violations. Specifically:

- FINRA has actual knowledge of a November 25, 2013 Securities and Exchange

Investor protection. Market integrity.

9509 Key West Avenue
Rockville,MD
20850-3329

t 240 386 4000
www.finra.org



Commission ("SEC") Cease-and-Desist Order (Administrative Proceeding File No. 3-15621) ("SEC Order") involving Curt Kramer ("Kramer"), President of Asher Enterprises, a convertible note holder of ECOS. The SEC's investigation found that Kramer and his firms Mazuma Corporation, Mazuma Funding Corporation, and Mazuma Holding Corporation ("his Mazuma firms"), obtained unregistered shares in penny stock issuers Laidlaw Energy Group ("Laidlaw") and Bederra Corporation ("Bederra"). According to the SEC Order Kramer and his Mazuma firms purchased two billion Laidlaw shares, which amounted to 80% of Laidlaw's outstanding shares at the time. They purchased these shares at a significant discount from prevailing market prices. Kramer and his Mazuma firms purchased the shares in 35 tranches with no six-month gaps, thus quantifying the transactions as a single integrated offering through which Laidlaw exceeded the $1 million limit under Rule 504 by raising a total of $1,259,550. No registration statement was filed for any shares that Laidlaw offered and sold to Kramer and his Mazuma firms, nor was any registration statement filed for any shares that Kramer and his Mazuma firms subsequently re-sold into the public market. Despite exceeding the $1 million limit, Kramer and his Mazuma firms continued to acquire and sell additional Laidlaw shares and profited by $126,963 from these transactions.

pdfelement

Further, according to the SEC Order, Kramer and Mazuma Holdings Corporation acquired more than one billion shares of Bederra in 2009 and 2010 through 21 separate transactions from the principal of Bederra's transfer agent, who had misappropriated the Bederra share certificates. Again they purchased the shares at a significant discount from prevailing market prices and re-sold the misappropriated Bederra shares to the public without any registration statement for profit of $934,404.

In the settlement, Kramer and his Mazuma firms agreed to pay disgorgement totaling $1,061,367 plus prejudgment interest of $128,611 and penalties totaling $273,000. Without admitting or denying the SEC's findings, Kramer and his Mazuma firms consented to the entry of an order finding that they violated Sections 5(a) and 5(c) of the Securities Act of 1933. The order required them to cease and desist from committing violations of Sections 5(a) and 5(c) and not participate in any Rule 504 offerings. Entry of the order also constituted a

Remove Watermark Now

disqualifying event for Kramer and his Mazuma firms under the recently enacted bad actor disqualification provisions of Rule 506.

In SEC Press Release 2013-249 "Penny Stock Financier Agrees to Pay $1.4 Million to Settle SEC Charges," dated November 25, 2013, the co-chair of the SEC Enforcement Division's Microcap Fraud Task Force stated that "[b]illions of shares were not vetted through the registration process yet became publicly traded as a result of the violations by Kramer and his Mazuma firms, and the SEC will continue to punish non-compliance with the registration provisions of the securities laws to ensure the investing public is protected in these types of transactions."



Asher does not appear on the current ECOS shareholder list; however the company has provided documentation which shows that Asher has transferred 640,474,489 shares into Cede & Co., the Depository Trust & Clearing Corporation's (DTCC) nominee name. Further, on October 21, 2013, Asher was issued an 8% Convertible Promissory Note in exchange for a $32,500 loan with a conversion date of January 2015. Once converted, Asher has the potential to become a beneficial shareholder of the company holding approximately 10% of ECOS' outstanding shares which Asher has the option to convert in its entirety, as stipulated in the July 14, 2014 Amendment to Convertible Promissory Note.

pdfelement

The above activity involving Kramer as convertible note holder of ECOS shares in the name of Asher Enterprises, has raised concerns for FINRA regarding the protection of investors and the transparency to the marketplace as it relates to the proposed corporate action request. As such, the Department has deemed EGOS's corporate action submission to be deficient under FINRA Rule 6490(d)(3)(3).

**<u>Your Right to Appeal the Determination</u>**

As a result, the Department will cease processing documentation related to such Company Related Action and will make no announcement on the Daily List. **Unless you request an appeal of the Department's determination in writing within seven (7) calendar days after service of this notice, your request will be closed.**

In accordance with the procedures set forth in FINRA Rule 6490, you have the right to appeal the Department's determination by submitting a written Notice of Appeal via facsimile or electronic mail, within seven (7) calendar days after service of this notice. Appeals are considered by a three-member subcommittee ("Subcommittee") comprised of current or former industry members of FINRA's Uniform Practice Code Committee. Please include your Case No. on all submissions.

Remove Watermark Now

***The hearing request must be received by 5:00pm Eastern Standard Time on 09/23/2014.*** The Notice of Appeal must be sent to:

FINRA
Market Operations, 2nd Floor
9509 Key West Avenue
Rockville, MD 20850
Fax: 202-303-3938
E-mail: I UPChearings@finra.org

Your written Notice of Appeal must be accompanied by proof of payment of the non-refundable Action Determination Appeal Fee of $4,000.00 made payable to FINRA. Payment must be submitted in the following manner within seven (7) calendar days of this notice:



pdfelement

Bank Name: Bank of America
Bank Address: 100 West 33rd St. New York, NY 10001
ABA Number:
Account Name: FINRA Cash Concentration
Account Number:
RFB or OBE as follows: CAS-29596-C5Y7S4, Appeal
Swift:

Your Notice of Appeal must set forth with specificity any and all defenses to the Department's deficiency determination. An appeal to the Subcommittee will operate to stay the processing of the Company-Related Action (i.e., the requested company-related action will not be processed during the period that the Requesting Party's appeal is pending). You may submit any additional supporting written documentation, via facsimile, electronic mail or otherwise, up until the time the appeal is considered by the Subcommittee. The Subcommittee will consider the appeal based solely on the written documents submitted by you and FINRA.

You will be notified of the date scheduled for the appeal. The Subcommittee will render a determination within three (3) business days following the day the appeal is considered by the Subcommittee. The Subcommittee's determination will constitute final action by FINRA.

**If you fail to file a written request for an appeal within seven (7) calendar days after service of this notice by the Department, along with the required fees, the Department's determination shall constitute final action by FINRA.**

If you have any questions, please contact FINRA Market Operations Department at 1-866-776-0800.

Very truly yours,

Remove Watermark Now

PATRICIA CASIMATES
Patricia Casimates
Vice President, FINRA Market Operations

pdfelement